IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS LANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:08-244 |
| | ) | JUDGE KIM R. GIBSON |
| WILLIAM BONIN, MARTIN HENRY, | ) | |
| FRANK MAHALKO and | ) | |
| HARVEY COLE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

GIBSON, J.

### I. SYNOPSIS

This matter comes before the Court on a Motion for Summary Judgment filed by the Defendants (Doc. 27) (the "Motion" or the "Motion for Summary Judgment"), pursuant to Federal Rule of Civil Procedure 56. The Plaintiff, Thomas Lane, opposes the Defendants' Motion for Summary Judgment. Doc. 35. For the reasons that follow, the Motion for Summary Judgment is GRANTED.

### II. BACKGROUND

This case arises from a workplace dispute between Plaintiff and Defendants, all of whom work for the Pennsylvania State Police. Doc. 1 at 1-3. Plaintiff alleges that his First Amendment freedom of speech and his Fourteenth Amendment due process rights were violated when he suffered adverse employment actions in retaliation for filing a workplace complaint and for his truthful but unpopular testimony when he was named as a witness by a supervisor in another workplace investigation (both of which he alleges are protected speech under the First Amendment (Doc. 1 at 18, ¶ 112)). Doc. 1 at 1,

19-22. Among the alleged retaliatory actions cited by the Plaintiff are:

- an alleged increase in workload (in the form of increased report filing responsibilities);[1]
- the allegedly unjust placement of the Plaintiff in a program for "low performers", which resulted in his being required to complete increased "ride alongs" with a superior officer with whom the Plaintiff had a strained relationship (Officer Mehalko, see discussion, infra);
- inability to switch shifts and take vacation days as he would have wished, which Plaintiff alleges was commonly permitted;
- allegedly harassing phone calls to his house when he called in sick on one instance;[2]
- an allegedly retaliatory sexual harassment complaint lodged against him by a coworker, Defendant Mehalko, which lead to his transfer to another barracks/work location;[3]
- the issuance of a supervisor's notation against Plaintiff when he failed to fill the gas tank of his patrol vehicle at the end of his shift;
- the initiation of a criminal investigation for trespass against the Plaintiff by his supervisor after a dispute and physical altercation between the Plaintiff and a nonparty private citizen which occurred when Plaintiff and his father were conducting a land survey of the nonparty's neighbor's property;[4]
- threatening and derogatory statements made about Plaintiff by a coworker to other members of the Pennsylvania State Police ("PSP").

Doc. 1.

Plaintiff also alleges that his due process rights were violated during the internal investigation

---

[1] The reports were both overdue reports for troopers who had retired, and follow up reports for a trooper who had transferred to another unit. Doc. 1 at 14.

[2] Plaintiff alleges that two telephone calls were made by his superior when he called in sick for his shift on April 28, 2008; Plaintiff alleges that the second, which allegedly followed the first by five minutes (10:40 p.m. and 10:45 p.m.) woke up his children. Thus, the quantity of phone calls (two) and the time of night that they were made appear to be the reason for Plaintiff's characterization of this incident as harassing; however, it is not clear from the complaint what time Plaintiff's shift was scheduled to start on that date, nor what time he initially called in sick.

[3] The internal investigation concluded on March 28, 2007 that the Plaintiff had violated PSP sexual harassment policy; Plaintiff claims this conclusion was retaliatory in nature. Doc. 1 at 21. It should be noted that transfer to another barracks as a result of a sexual harassment claim appears to be a common practice, as evidenced by Plaintiff's recitation of facts, which indicates that the trooper against whom Plaintiff had complained in July 2006 was similarly transferred pending the outcome of the sexual harassment investigation. Doc. 1 at 3.

[4] The details of this incident are unclear but are not determinative in this Motion for Summary Judgment. Plaintiff contends that the neighbor had stated his intention to call the police, that Plaintiff had supplied him with the telephone number to his barracks, and that the individual had called, but Plaintiff infers that the resulting investigation of him for trespass would not have occurred but for Defendant Mehalko's desire to retaliate against him (Defendant Mehalko took the call). Plaintiff was ultimately informed that the report listing him as a suspect in the trespass incident would indicate that the charges against Plaintiff were unfounded, as the Cambria County District Attorney Office had advised, by letter dated August 20, 2007, that it was determined that Plaintiff had not engaged in criminal conduct. Doc. 1 at 12-13.

(noted above) of his alleged sexually harassing behavior towards this coworker, Defendant Mehalko. Doc. 1 at 5-6, 21, ¶ 116; Doc. 36 at 13-14. Plaintiff alleges that he first received notification of the allegations against him on January 16, 2007, and alleges that they were made in direct retaliation for Plaintiff's earlier claims against Defendant Mehalko, which had been categorized as sexual harassment claims (and which had resulted in Defendant Mehalko being involuntarily transferred to the Indiana barracks for a period of about two and a half months pending investigation of those claims). Doc. 1 at 3-4. Plaintiff alleges that when he received notification of the allegations against him he contacted a supervisor, Corporal Zona, and informed him that he believed these allegations were made simply for retaliatory purposes. Doc. 1 at 5. Plaintiff states that "[o]n or around February 24, 2007, [he] was interviewed by Lieutenant Madigan about the retaliatory complaint filed by Corporal Mehalko". Plaintiff states that on or around March 2, 2007 he again contacted Lieutenant Madigan and gave him the name of a coworker, Trooper Miller, and requested that Trooper Miller be interviewed in Plaintiff's defense. Doc. 1 at 6. Plaintiff acknowledges that Trooper Miller was interviewed in this capacity, but seems to object to the fact that Trooper Miller was interviewed by phone, and not in person. Doc. 1 at 6. On March 28, 2007, Plaintiff was informed that the investigation had concluded, and it had been determined that Plaintiff had violated PSP's sexual harassment policy. Id. The Plaintiff requested that all notations as to the investigation and disposition be removed from his record, but this request was denied. Doc. 1 at 6-7.

Plaintiff claims damages in the form of adverse consequences to his work record (*i.e.*, a notation to his file regarding an unfavorable investigation), involuntary transfer to another barracks, undesirable work assignments which resulted in an increased work load (*i.e.*, finishing overdue reports, supra), a notation on his work record that criminal charges against him were investigated (he was vindicated), as well as medical injuries/damages due to loss of sleep, worry and emotional distress.

3

Doc. 1 at 1 & 20.

## III. STANDARD OF REVIEW

Summary judgment may only be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); see *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005); citing *Debiec v. Caot Corp.*, 352 F.3d 117, 128 n. 3 (3d Cir. 2003). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment against a party is appropriate where that party fails to make a sufficient showing of an element for which that party will bear the burden of proof at trial, and which is an essential element of that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Township*, 478 F.3d 144, 147 (3d Cir. 2007); see also *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 126 (3d Cir. 1994); citing *Oritani Sav. And Loan Ass'n v. Fidelity and Deposit Co.*, 989 F.2d 635, 637 (3d Cir. 1993). The burden is initially on the moving party to demonstrate that the evidence contained in the record does *not* create a genuine issue of material fact. *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). See also *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994); citing *Celotex Corp. v. Catreett*, 477 U.S. 317, 322-32 (1986). Where the non-moving party will bear the burden of proof at trial as to some element or claim, the moving party may meet its initial burden as to issues of material fact by showing that the

4

admissible evidence contained in the record would be insufficient to carry the non-moving party's burden of proof. *Celotex*, 477 U.S. at 322.

Once the moving party satisfies its burden that the record contains no genuine issue of material fact, the burden shifts to the non-moving party, who must go beyond his or her pleadings by the use of affidavits, depositions, admissions or answers to interrogatories, in order to demonstrate that there *is* a genuine issue of material fact for trial. *Id.* at 324. In attempting to do so, the non-moving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

### IV. JURISDICTION AND VENUE

The Court's jurisdiction has been invoked over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a)(3) and (a)(4), and 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b), as the parties, witnesses and evidence in this case are located in Cambria County in the Western District of Pennsylvania.

### V. DISCUSSION –ARGUMENTS IN SUPPORT OF SUMMARY JUDGMENT

The arguments supplied by both parties regarding the Defendants' Motion for Summary Judgment are largely a disorganized recitation of disputed facts, hearsay and name-calling. Plaintiff, as noted above, claims unconstitutional retaliation by Defendants for exercise of his First Amendment right to free speech, as well as violation of his Fourteenth Amendment Due Process rights. In response, Defendants make the following legal arguments:

       a. Plaintiff's activity is not protected by the 1st Amendment;
       b. Plaintiff can never show the necessary causation between his speech and the Defendants' allegedly retaliatory actions;
       c. The alleged retaliatory acts are not "adverse" as they would not deter a person of "ordinary firmness" from exercising his 1st Amendment rights;

further, the alleged retaliatory acts either never happened or are nothing more than trivial and *de minimus*;

d. Due process was never triggered;
e. If procedural due process *was* triggered Plaintiff received it;
f. Even assuming that Due Process was denied, Plaintiff's utilization of the PSP's grievance procedures after this denial remedied any procedural due process violation;

Doc. 27 at 16, ¶ 39.

## A. CIVIL LIABILITY UNDER 42 U.S.C. § 1983

The instant claim "is brought pursuant to 42 U.S.C. § 1983, which "imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution of the United States." *Jarrett v. Twp. of Bensalem*, 312 Fed. Appx. 505, 507 (3d Cir. 2009); citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000).

As the Third Circuit has explained,

§ 1983 is not a source of substantive rights, but provides a remedy against state officials for violations of constitutional rights. [*internal citations omitted*]. The initial inquiry in a section 1983 suit is (1) whether the conduct complained of was committed by a person acting under color of state law and (2) whether the conduct deprived the complainant of rights secured under the Constitution or federal law.

*Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. Pa. 1998); citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432, 85 L. Ed. 2d 791 (1985) (plurality opinion); also citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694-95 n.3, 61 L. Ed. 2d 433 (1979); also citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988); also citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); see also *Jarrett v. Twp. of Bensalem*, 312 Fed. Appx. 505, 507 (3d Cir. 2009).

In the instant case, all of the defendants are employees of the Pennsylvania State Police and were clearly acting under the color of state law in the scope of their employment as officers when the

alleged incidents occurred.

## B. FREE SPEECH – 1ST AMENDMENT LEGAL STANDARDS

In order to evaluate a First Amendment retaliation claim in the context of an employer-employee relationship, we must utilize a three-step framework:

(1) the employee must demonstrate that his/her speech is protected, that is, it addresses a matter of public concern and the employee's interest in speech outweighs the employer's countervailing interest in promoting workplace efficiency and avoiding workplace disruption (*i.e.*, the balancing test established in *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (U.S. 1968));

(2) the employee must prove by a preponderance of the evidence that his/her speech was a **substantial motivating factor** in the retaliatory action against him/her;

(3) the burden is then shifted to the employer, who may defeat the claim if it can prove by a preponderance of the evidence that the allegedly retaliatory action would have been taken absent the protected speech.[5]

See *Reilly v. Atlantic City et al.*, 532 F.3d 216, 224 (3d Cir. 2008); see also *Williams v. LaCrosse*, 2005 U.S. Dist. LEXIS 6807 at *11-12 (E.D. Pa 2005); see also *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968); see also *Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006); see also 81 F.3d 1283, 1288 (3d Cir. 1996); see also *Suppan v. Dadonna*, 203 F.3d 228, 235-36 (3d Cir. 2000); see also *Jendrzejewski v. Watson*, 2009 U.S. Dist. LEXIS 24352 at *5 (W.D. Pa. 2009); see also *Nicholas v. Pennsylvania State University et al.*, 227 F.3d 133 at 144 (3d Cir. 2000); citing *Mount Healthy Board of Education v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977).

As to the first prong, a public employee's speech may be determined to involve a matter of public concern only if it can "'be fairly considered as relating to any matter of political, social or other concern to the community.'" *Baldassare v. The State of New Jersey, et. al.*, 250 F.3d 188, 195 (3rd Cir. 2000). However, the Supreme Court has held that speech related to matters involving *solely a*

---

[5] "[T]he defendants must prove that the protected conduct was **not** the but-for cause . . . it is the defendants' burden to prove **lack of but-for cause**." *Suppan et al. v. Dadonna et al.*, 203 F.3d 228, 236 (3d Cir. 2000) (emphasis added).

*personal grievance* is not speech addressing a matter of public concern. See *Connick v. Myers*, 461 U.S. 138, 147, 75 L.Ed. 708, 103 S. Ct. 1684 (1983). However, "[t]his does not . . . suggest that speech which is motivated by private concern can never qualify as protected speech. It clearly can if it addresses a matter that concerns the public as well as the speaker." *Brennan v. Norton, et al.*, 350 F.3d 399, 413 (3d Cir. 2003); citing *Rankin v. McPherson*, 483 U.S. 378, 387 n. 11, 97 L. Ed. 2d 315, 107 S. Ct. 2891 (1987).

Indeed, district courts in Pennsylvania have found that speech which illuminates a hostile work environment in a public office *may* be a matter of public concern and therefore protected speech, where it is intended to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials. See *Schlichter v. Limerick Twp.*, 2005 U.S. Dist. LEXIS 7287 at *15-17 (E.D. Pa. 2005); citing *Baldassare* at 195. In contrast, district courts in Pennsylvania have found cases that centered on *individual performance disputes* have *not* met the "public concern" criteria such that the Plaintiff's speech would be considered protected speech under the First Amendment. Thus, where a plaintiff's alleged protected speech concerns matters specific only to his own interests/concerns, this is *not* properly designated as First Amendment Speech for the purposes of a § 1983 action. See *Williams v. LaCrosse* at *13-15 ("An examination of the [Plaintiff's] statement reflects that all of [the Plaintiff's] speech was of a personal nature and was presented with respect to his own view of his own performance and his potential grievances with the manner in which the [barracks where he worked] was run."); see also *Schlichter v. Limerick Twp.*, 2005 U.S. Dist. LEXIS 7287 at *15-17 (E.D. Pa. 2005).[6]

---

[6] "'A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community,' such as if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.' [*citations omitted*] Speech by public employees is not considered to be on a matter of public concern when it is 'upon matters only of personal interest.' [*citations omitted*] Generally, 'speech disclosing public officials' misfeasance is protected while speech intended to air personal

8

In addition, this Court has been clear that there is a distinction between speech expressed in the course of one's role as a public employee and that specifically intended to raise public awareness of matters of public concern. See *Jendrzejewski v. Watson*, 2009 U.S. Dist. LEXIS 24352 at *5-7 (W.D. Pa. 2009) ("[the Supreme Court's decision in] *Garcetti* does not protect speech expressed in furtherance of a duty of . . . public employment, but . . . only matters of public concern. [*citations omitted*]. While the subject of alleged unequal application of the law by the PSP to its own members and employees would certainly be a subject of public concern in Pennsylvania," a reporting of legal/regulatory violations by PSP employees is a furtherance of one's duty as a public employee and is not protected speech; citing *Garcetti v. Ceballos*, 547 U.S. 410, 420-21, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)).

In contrast, in *Baldassare v. New Jersey*, the court found that a state-employed investigator, whose job function was to conduct internal investigations of alleged criminal conduct by public employees, and who was fired in retaliation for and just prior to the circulation of a report illuminating improprieties by the board of commissioners, was found to have a colorable First Amendment claim. The court's reasoning was that the plaintiff's investigatory work, which encompassed exposing corruption/criminal activity by other law enforcement officials, was a matter of public concern and therefore amounted to protected speech.[7] 250 F.3d 188, 196-97 (3d Cir. 2001); cited by *Williams*, 2005 U.S. Dist. LEXIS 6807 at *12 (E.D. Pa. 2005).

Even where an employee's speech is determined to be protected First Amendment speech, in order for a § 1983 claim to be actionable it requires injury. See *Suppan et. al. v. Dadonna et. al.*, 203 F.3d 228, 235 (3d Cir. 2000). The rationale behind this is that "[i]t would trivialize the First

---

grievances is not.' [*citations omitted*]"
[7] It should be noted that in *Baldassare*, the plaintiff was discharged, which is not the case here.

Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Id.* Thus, retaliatory acts committed by an employer which would be unlikely to "'deter a person of ordinary firmness'" from exercising those First Amendment rights are generally considered to be *de minimus* or trivial, and are not actionable. *Schlicter* at *18; citing *Schneck v. Saucon Valley School District*, 340 F. Supp. 2d 558, 569 (E.D. Pa. 2004); in turn quoting *Suppan v. Dadona*, 203 F.3d 228, 235 (3d Cir. 2000). The inquiry is fact-specific. *Schlicter* at *18. Therefore, "courts have declined to find that an employee's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Schlicter* at *19. However, "an entire campaign of harassment which though trivial in detail may have been substantial in gross." *Suppan* at 235. In these latter cases, the harm does not necessarily have to rise to the level of discharge for the action to be colorable. See, *e.g.*, *McKee et al. v. Hart*, 436 F.3d 165 at 169-170 (3d Cir. 2006); citing *Suppan* at 234-35; also citing *Brenan v. Norton*, 350 F.3d 399, 422 n. 17 (3d Cir. 2003).

## C.     1ST AMENDMENT ANALYSIS IN THE INSTANT CASE

In the instant case, we find that Plaintiff's speech did not constitute a matter of public concern, and thus was not protected speech under the First Amendment. As in *Williams*, cited supra, Plaintiff's speech is of a personal nature and was presented with respect to his own view of his own performance and his grievances with the way in which the Ebensburg Barracks was run.

We can create some context for the facts in this case by looking at several other cases. In *Baldassare*, discussed supra, the matter of public interest at issue was alleged criminal wrongdoing by public officials and the plaintiff's protected speech related to his investigation of this alleged wrongdoing (specifically, the publication of a report detailing the findings of Plaintiff's investigation

10

into these alleged criminal activities). *Baldassare* at *13. Similarly, in *Suppan*, supra, the Third Circuit found that union membership/activity and support of a political candidate disfavored by his immediate superiors was protected speech, and that the Plaintiff, who had a superior performance record and was on the list for promotion, had been passed over due to his exercise of this free political association (*i.e.,* supporting a political candidate unpopular with his immediate superiors). *Suppan* at 232.

On the other end of the spectrum is a case involving the Pennsylvania State Police, *Williams*. In *Williams*, the plaintiff claimed to have been terminated because his superior(s) were overly sensitive to possible litigation from females claiming sexual harassment in the workplace. *Williams* at *13-14. The District Court in *Williams* found that the sensitivity of the plaintiff's superiors due to past litigation did "not transform the actions Mr. Williams took in fulfilling his job obligations into an act of public speech." *Williams* at *14. The U.S. District Court for the Eastern District of Pennsylvania found that the plaintiff's termination was not related to issues of free speech touching on matters of public concern. Rather, the Court found that the plaintiff's free speech, in the form of a statement at the time of his hearing, had to do with his personal dissatisfaction over the way the barracks was run, and his disagreement with the analysis of his work performance. *Williams* at *14-15. The Court found that "[a]lthough this document admittedly contained some criticisms of State Police administration, the context of the statement does not suggest that Mr. Williams was speaking on behalf of the public interest. Because neither Mr. Williams's actions nor his stated grievances with the State Police appear to have been statements made in the public interest, his speech with respect to this matter does not fall into the category protected by the First Amendment." *Williams* at *15.

Similarly, in *Jendrzejewski*, supra, we clearly stated that speech exercised in furtherance of one's public employment duties, and not for the purpose of illuminating the public on a matter of

11

public concern, is *not* protected speech for purposes of a retaliatory 1st Amendment claim: "[T]he Plaintiff's reporting of violations of law and regulations by PSP employees was in furtherance of his duty as a member of the PSP. There is no allegation that he uttered reports of these occurrences to the press or to the public outside of the PSP, rather, he uttered reports of these matters through a complaint within the PSP. . . . the Plaintiff's reporting of violations of law and regulations by PSP employees was in furtherance of his duty as a member of the PSP . . . Thus, the Plaintiff has failed to sufficiently allege facts that establish a claim of violations to his right as a citizen to speak on matters of concern to the public when filing an internal PSP complaint against fellow police officers", or acting as a witness when called upon in another internal investigation. *Jendrzejewski* at \*5-\*7.

Plaintiff has not attempted to raise public awareness of deficiencies within the PSP which would rise to the level of public concern. Rather, as in *Williams* and *Jendrzejewski*, Plaintiff's complaint centers on personal grievances with the PSP and alleged retaliation for speech which is not protected under the First Amendment.

In the instant case, the Plaintiff's "free speech" at issue had to do with his involvement in three internal investigations of police conduct, one in which he was named and served as a witness, one of which he filed, and one of which was filed against him; however, that alleged conduct did not rise to the level of criminal behavior, as in the case of *Baldassare*, nor was the Plaintiff attempting to illuminate alleged wrongdoing on the part of employees of the PSP as a matter of public concern, or a general policy issue to be addressed; rather, the Plaintiff in the instant case was concerned with how the alleged behavior affected himself personally. As such, his "speech" does not rise to the level of constitutionally protected First Amendment speech, and any alleged retaliation for that speech does not

12

implicate constitutional concerns.[8]

Thus, summary judgment is **GRANTED** as to Plaintiff's First Amendment Claim.

### D.    DUE PROCESS – LEGAL STANDARDS

None of the parties have discussed the legal standards regarding property interests of Pennsylvania State employees in their jobs. Nonetheless, we will discuss these issues, as follows.

The Fourteenth Amendment to the U.S. Constitution states, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." USCS Const. Amend. 14; see also *Gardner v. McGroarty*, 68 Fed. Appx. 307, 310, 2003 U.S. App. LEXIS 11452 (3d Cir. 2003). The Supreme Court has held that this refers not only to the adequacy of due process procedures, but also to substantive law. *Nicholas v. Pennsylvania State University, et al.*, 227 F.3d 133, 139; citing *Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833, 846-47, 120 L.Ed. 2d 674, 112 S. Ct. 2791 (1992); also citing *Witney v. California*, 274 U.S. 357, 373, 71 L. Ed. 1095, 47 S. Ct. 641 (1927). The Third Circuit has held that "a non-legislative government deprivation 'that comports with procedural due process may still give rise to a substantive due process claim 'upon allegations that the government deliberately and arbitrarily abused its power.'"  *Nicholas v. Pennsylvania State University* at 139 (citations omitted).

The Plaintiff's complaint does not specify whether he is claiming a violation of his procedural or substantive due process rights, and indeed references the term "due process" only twice, however we nonetheless discuss the law as relates to both substantive and procedural due process.

As we have previously stated, "[n]on-legislative, *substantive* due process rights are those rights that are 'fundamental under the Constitution' and only one such right has been consistently found to be

---

[8] We do not mean to infer that the Plaintiff would or would not have a colorable state claim; we make no comment on that issue either way.

classified as such, that is ownership of real property." (*emphasis added*). *Jendrzejewski v. Watson et al.*, 2009 U.S. Dist. LEXIS 24352 at *11 (W.D. Pa. 2009); citing *Nicholas v. Pennsylvania State University*, 227 F.3d 133 (3d Cir. 2000).

As succinctly stated by the Third Circuit,

[t]o prevail on a substantive due process claim challenging a state actor's conduct, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.' [*internal citations omitted*]. Whether a property interest is protected for purposes of substantive due process is a question that is not answered by reference to state law. Rather, for a property interest to be protected for purposes of substantive due process, it must be 'fundamental' under the United States Constitution. [*internal citations omitted*]. This court has held explicitly that public employment is not a fundamental right entitled to substantive due process protection.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006); citing *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-141 (3d Cir. 2000); in turn citing *Reich v. Beharry*, 883 F.2d 239 (3d Cir. Pa. 1989); also citing in turn *Ransom v. Marrazzo*, 848 F.2d 398, 244-45 (3d Cir. 1988).

Thus, as a predicate to any *substantive* due process claim, Plaintiff would have had to demonstrate that he has a fundamental property interest under the United Stated Constitution, which he has not even claimed.

In contrast, it is well settled that *procedural* due process rights under the Fourteenth Amendment apply only to deprivations of "[p]roperty interests . . . [which] are created and their dimensions are defined . . . from an independent source such as state law." See *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972); cited by *Clark v. Falls*, 890 F.2d 611, 617 (3d Cir. 1989); also cited by *Blanding v. Pennsylvania State Police et al.*, 811 F. Supp. 1084, 1091 (E.D. Pa. 1992), aff'd 12 F.3d 1303 (3d Cir. Pa. 1993); see also *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 538, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985); see also *Demko v. Luzerne County Community College*, 113 F. Supp. 2d 722, 728 (M.D. PA. 2000).

14

Accordingly, we will move on to the issue of *procedural* due process.

### 1. **Procedural Due Process**

As stated, for purposes of procedural due process, "[w]hether a public employee has a property interest in continued employment is a question of state law." *Blanding* at 1091; citing *Bishop v. Wood*, 426 U.S. 341, 48 L. Ed. 2d 684, 96 S. Ct. 2074 (1976). Plaintiff has not claimed or demonstrated any property interest in his employment with the PSP.

In terms of procedural due process, district courts in Pennsylvania have held that a protected property right may only be established by a "for cause" termination provision in a statute or employment contract. See *Demko v. Luzerne County Community College*, 113 F. Supp. 2d 722, 728 (M.D. Pa. 2000) (*citations omitted*). In Pennsylvania, a state agency may not create tenure unless the *legislature specifically grants the agency the power to do so*; therefore, a public employer/authority may not enter into a contract with its employee(s) that contracts away the right of summary dismissal unless specifically given this power by the legislature. See *Demko* at 729-731; see also *Stummp v. Stroudsburg Mun. Auth.*, 540 Pa. 391, 396, 658 A.2d 333, 334 (1995) ("The law in Pennsylvania is abundantly clear that, as a general rule, employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason."); see also *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960); see also *Mahoney v. Philadelphia Housing Authority*, 13 Pa. Commw. 243, 320 A.2d 459 (1974), cert. denied, 419 U.S. 1122, 95 S. Ct. 806, 42 L. Ed. 2d 822 (1975); see also *Cooley v. Pennsylvania Hous. Fin. Agency*, 830 F.2d 469, 473 (3d Cir. 1987)[9] ("[W]e do not find the requisite legislative mandate within the enabling statute to bestow a right upon the agency to enter into employment cont[r]acts with its employees . . . no power to contract exists."); see also *Schlicter*, supra,

---

[9] In *Cooley* the Plaintiff/employee based his property interest claims on an agency handbook, rather than a written contract. In the instant case, the Plaintiff has not stated the basis for any property claim in employment which, if valid, would in turn trigger an analysis of his claims of a (procedural) due process violation.

at \*22; citing *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).

Further, even a broad statutory grant of powers, given because it is deemed necessary to carry on the business and proprietary functions of the agency in question, does *not* include the power to contract away the right of summary dismissal in the State of Pennsylvania. See *Scott* at 157, 282;[10] see also *Demko* at 729-730; see also *Cooley* at 473; see also *Scott* at 278-280.

As stated previously, this is because Pennsylvania follows the traditional rule of dismissal at will, and public employees cannot be tenured unless specifically identified as such by legislation. See *Demko* at 730; quoting *Mahoney v. Philadelphia Housing Authority*, 13 Pa. Commw. 243, 320 A.2d 459 (1974), cert. denied, 419 U.S. 1122, 95 S. Ct. 806, 42 L. Ed. 2d 822 (1975) ("'Pennsylvania law does not allow a state agency to create tenure unless the legislature specifically grants the agency the power to do so.'"); see also *Cooley* at 472-473 ("Unless there is express legislative language to the contrary, the security of tenure does not attach to public employment. In general, Pennsylvania governmental agencies do not have the power to grant tenure and where it has intended that tenure should exist, the legislature has been very precise in so stating . . . Because of the long tradition of at-will public employment, it must be assumed that when the legislature speaks, it does so explicitly, and if, in their wisdom, it chose to grant tenure . . . it would have enacted the appropriate legislation."); see also *Scott* at 278-280.[11]

---

[10] "A power to confer tenure by contract most assuredly does not derive from the general grant of powers necessary and convenient to carry out the purposes of the Authority, nor from the general power to make contracts of every name and nature. Each of these grants of broad power relates to those other powers necessary to carry on the business and proprietary functions of the Authority and cannot be read to include the power to contract away the right of summary dismissal."

[11] Further, the Third Circuit has recognized that even where there *is* a valid contract for *tenured* employment, such contract rights carry with them procedural due process rights, but *not* **substantive** due process rights. See *Jendrzejewski v. Watson et al.*, 2009 U.S. Dist. LEXIS 24352 at \*10-11 (W.D. Pa. 2009); quoting and citing *Nicholas v. Pennsylvania State University*, 227 F.3d 133 (3d Cir. 2000) ("tenured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interest that have been deemed fundamental under the Constitution. . . . Nor does public employment approach the interests 'implicit in the concept of ordered liberty like personal choice in matters of marriage and family. [*citations omitted*] . . . we view public employment as more closely analogous to those

16

Although Plaintiff has not provided this Court with a basis for a property right in employment, we look to the Pennsylvania Administrative Code, which provides that "no enlisted member of the Pennsylvania State Police shall be <u>dismissed from service</u> or <u>reduced in rank</u> except by action of a court martial board held upon the recommendation of the Commissioner of the Pennsylvania State Police and the Governor." 71 P.S. § 65(e) (*emphasis added*);[12] <u>see</u> <u>also</u> *Williams* at \*17.

It is well established that *probationary* Pennsylvania State Troopers do *not* have a property interest in continued employment. <u>See</u> *Williams* at \*17; <u>see</u> <u>also</u> *Blanding v. Pennsylvania State Police*, 12 F.3d 1303, 1307 (3d Cir. Pa. 1993). However, the Third Circuit has found that "once an enlisted member's probationary period has expired, the trooper has an interest in his *continued employment* for which due process requires a hearing." (*emphasis added*). *Blanding* at 1307; <u>citing</u> *Bolden v. Pennsylvania State Police*, 371 F. Supp. 1096 (M.D. Pa. 1974). Further, this Court has held "that the terms of the collective bargaining agreement ["CBA"] between the Commonwealth of Pennsylvania and the troopers it employs **can** be the basis for any procedural due process claim . . . including the failure to provide the Plaintiff with three days in order to respond to the charges filed against him [in an internal investigation]" where the CBA was procedure was not followed. *Jendrzejewski* at \*15.

This Court has held that "the Third Circuit has found and the Pennsylvania Code establishes that [a] veteran trooper . . . who has served more than the initial eighteen month probationary period, has a due process right to hearing prior to his removal from his employment." *Jendrzejewski* at \*17;

___

state-created property interests that this Court has previous [*sic*] deemed unworthy of substantive due process than to the venerable common-law rights of real property ownership.'"). In any event, no claim has been made that there is a tenured employment situation in the instant case, nor did the Court find any evidence of any possibility for employees of the PSP to have tenured employment.

[12] An "enlisted member" is defined as excluding those with less than eighteen months of service: "(4) For the purposes of this subsection (b), the term 'enlisted member' shall not include a cadet or trooper of the Pennsylvania State Police with less than eighteen months of service." 71 P.S. § 251(b)(4); <u>see also</u> *Blanding*, 811 F. Supp. 1084, 1091 (E.D. Pa. 1992).

17

citing *Blanding v. Pennsylvania State Police*, 12 F.3d 1303, 1305-1307 (3d Cir. 1997); in turn citing 71

P.S. § 65. This due process right was established by the Pennsylvania State Legislature under § 205 of

the Pennsylvania Administrative Code, as follows:

> No enlisted member of the Pennsylvania State Police shall be dismissed from
> service or reduced in rank except by action of a court martial board held upon the
> recommendation of the Commissioner of the Pennsylvania State Police and the
> Governor.

71 P.S. § 65(e); quoted by *Jendrzejewski* at *17.

### E.     DUE PROCESS ANALYSIS IN THE INSTANT CASE

Based on this Circuit's past holdings that an employment interest is not a fundamental

constitutional property right deserving substantive due process analysis, see supra, this Court finds that

Plaintiff clearly does not have a substantive due process right to his public employment. See *Nicholas*

*v. Pennsylvania State University* at 142. Therefore, we will continue with an analysis of procedural

due process issues as applied to the instant case.

At the outset, we note that the caselaw cited above identifies a due process requirement for

Pennsylvania State Police *who have been terminated*, which is not the case here. Plaintiff claims that

his due process rights under the Fourteenth Amendment were violated when he was not permitted

proper due process during an internal workplace investigation of his allegedly sexually harassing

conduct, discussed supra. Doc. 1 at 22.

As stated, Plaintiff does *not* allege actual discharge, nor does he allege constructive discharge,

nor actual reduction in rank. Based on the pleadings, Plaintiff is still employed by the PSP, and his

rank, hours and pay have not been reduced. While Plaintiff has not clearly stated that he is claiming

constructive reduction in rank, he has complained about the nature of his duties, scheduling, and other

issues.[13] Therefore, we will consider the issue of constructive discharge reduction in rank, looking to indicia identified by the Third Circuit, as follows:

- reduction in pay
- imposition of duties normally given to employees of lower ranks;
- substantially reduced responsibilities;
- termination of privileges of rank;
- whether the above changes are temporary in nature

*Clark v. Falls*, 890 F.2d 611, 618 (3d Cir. 1989).

We note that Plaintiff has argued that his duties were substantially *increased* when he was assigned to finish overdue reports (Doc. 1 at 14-15), not that his responsibilities were *reduced*. Certainly, Plaintiff has argued that the duties to which he was assigned were undesirable, however we have not been presented with evidence that they were duties normally assigned to an officer of a lower rank. Plaintiff alleges that he was assigned to finish overdue reports for retired troopers, and that his superiors, specifically, Defendant Bonin, was aware that these reports should have been assigned to a "supervisor" instead, implying a person *above* Plaintiff's rank. Doc. 1 at 14. Plaintiff also contends that he was no longer permitted to switch shifts and take days off. Plaintiff also claims that he was denied the ability to take a day off or change shifts at his choosing, and was forced to accompany a supervisor in "ride-alongs".

The Court finds that a reasonable trier of fact could not reasonably determine these changes to amount to a constructive reduction of rank, and based on this alone we would find summary judgment of the due process claim warranted. Indeed, the Third Circuit has found that "employment decisions which do not terminate or abridge [a Plaintiff's] employment contract, and which could be litigated in

---

[13] Plaintiff has complained of being forced to complete undesirable work (completion of written reports and participation in ride-alongs), the inability to change his assigned shifts and/or take desired vacation days, and being transferred to a different barracks (*i.e.*, Indiana, PA, which the Court infers was somehow a less desirable work location than Plaintiff's previous barracks, Ebensburg, although Plaintiff has not clearly stated this nor provided an explanation of his reasoning). See Doc. 1.

state tribunals, do not constitute deprivations of property interests under the fourteenth amendment." *Rode v. Dellarciprete*, 845 F.2d 1195, 1205 (3d Cir. Pa. 1988);[14] The inability to determine one's work schedule at will, as well as the requirement of riding with a superior officer, do not amount to constructive reduction in rank, much less constructive discharge.[15] See, *e.g.*, *Terzuolo v. Board of Supervisors of Upper Merion Township et. al.*, 137 Pa. Commw. 353, 586 A.2d 480 (1991); see also *Cotner v. Yoxheimer*, 2008 U.S. Dist. LEXIS 51388 (M.D. Pa. 2008). (As stated, we have no evidence or allegations of a reduction in pay).

Further, we note that the Third Circuit has held that a claim for violation of First Amendment Rights under § 1983 could not survive a motion for summary judgment where the plaintiff *failed to argue* constructive discharge in his complaint or briefs, and his job title, salary and benefits were not modified. *Ferraro v. City of Long Branch et al.*, 23 F.3d 803, 804-806 (3d Cir. 1994). Such is the case here. In addition, there has been no evidence presented that the Plaintiff's working conditions became so unbearable that he was forced to resign. (The Third Circuit has noted the distinction between a constructive discharge, where "a public employer . . . drove an employee to resign . . . by making life unbearable for him . . . and lesser allegedly wrongful conduct"; thus, the *Ferraro* decision interpreted constructive discharge as actually being forced to resign. *Ferraro* at 807).

In *Ferraro*, the Third Circuit also noted with approval two decisions from other jurisdictions, one which found "'that personnel decisions short of termination do not constitute a deprivation of a property interest under the due process clause of the fourteenth amendment'", and one which found that a transfer in retaliation for whistleblowing, where no loss of pay or rank was involved, did not

---

[14] Indeed, *Rode* cited a 7th Circuit case which found that "employment decisions which *do* violate employment contract[s] may not form [the] basis for suit under section 1983." *Rode* at 1205; citing *Brown v. Brienen*, 722 F.2d 360, 364-65 (7th Cir. 1983).

[15] As stated above, by his own admission, the reports that Plaintiff was asked to complete were duties normally assigned to an officer of higher rank, thus do not indicate a demotion.

amount to a deprivation of a protected liberty or property interest. *Ferraro* at 807; citing *Wargat v. Long*, 590 F. Supp. 1213, 1215 (D. Conn. 1984); also citing *Oladeinde v. City of Birmingham*, 963 F.2d 1481 (11th Cir. 1992), cert. denied, 123 L. Ed. 2d 153, 113 S. Ct. 1586 (1993). Similarly, in *Jendrzejewski*, this Court concluded that a state trooper's abrupt transfer to another barracks and suspension with pay for ten days pending an internal investigation did not form the basis for a due process claim, because the plaintiff was never terminated or reduced in rank. 2009 U.S. Dist. LEXIS at *16-17.[16]

Additional cases likewise support the conclusion that no due process was triggered in this instance. In *Clark v. Township of Falls*, the Third Circuit found, after analyzing the indicia cited above, that an officer that had lost many of his duties, but had retained the same rank and pay, had *not* suffered constructive demotion. 890 F.2d 611 (3rd Cir. 1989). Similarly, in *Terzuolo v. Bd. of Supervisors of Upper Merion Twp.*, a Pennsylvania State court held that an officer whose shifts had been changed and whose salary had been reduced, and who had been prohibited from serving in the supervisory position of Acting Sergeant for six (6) months, had not suffered constructive demotion or suspension. 137 Pa. Commw. 353, 586 A.2d 480, 482 (Pa. Commw. Ct. 1991); cited by *Cotner v. Yoxheimer*, 2008 U.S. Dist. LEXIS 51388 (M.D. Pa. 2008).

Thus, Plaintiff has suffered no actual or constructive termination, demotion or suspension which would trigger a procedural due process concern.[17]

---

[16] Further, as the Third Circuit has previously noted, it is important not to conflate the issue of due process and alleged loss of a property right with the First Amendment issue – the Supreme has held that a First Amendment claim does not implicate substantive due process. See *Nicholas v. Pennsylvania State University* at 143, fn. 3 ("The Supreme Court has recognized an independent 1983 action for retaliatory termination in violation of the First Amendment [*citations omitted*] and 'claims governed by explicit constitutional text may not be grounded in substantive due process.'").

[17] We further note that even if a procedural due process right *had* been triggered, although a formal hearing was not held, the record shows that Defendant was afforded sufficient opportunity to defend his position, and did so through various means.

## VI. CONCLUSION

We conclude that the admissible evidence contained in the record would be insufficient to carry the non-moving party's burden of proof. Plaintiff has no property right (in his employment) which would trigger constitutional protection and require substantive or procedural due process. Further, Plaintiff's speech did not rise to the level of constitutionally protected First Amendment speech, as it did not constitute an issue of public concern (nor did he allege such), and therefore there is no constitutional claim for retaliation based on exercise of First Amendment speech. It is clear from the pleadings that the parties have a contentious relationship, which has manifested in behaviors that are ill-befitting members of law enforcement - indeed, much of the behavior acknowledged by both parties in the pleadings is shockingly sophomoric. The Court expresses its sincere hope that all of the individuals involved will make an effort to act in a more professional manner and with more of a spirit of brotherhood towards their fellow officers. Nonetheless, the facts presented, even taken in the light most favorable to the nonmovant, do not pose a constitutional question such that the complaint can survive a summary judgment motion.

Therefore, Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED**. An appropriate order follows.

22

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS LANE,              )
                           )
        Plaintiff,         )
                           )
        v.                )      **CIVIL ACTION NO. 3:08-244**
                           )      **JUDGE KIM R. GIBSON**
**WILLIAM BONIN, MARTIN HENRY,**  )
**FRANK MAHALKO and**       )
**HARVEY COLE,**           )
                           )
**Defendants.**           )

## ORDER

AND NOW, this 16th day of February, 2011, this matter coming before the Court on Defendants' Motion for Summary Judgment (Document No. 27), **IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment is **GRANTED**.

BY THE COURT:

_Kim R. Gibson_

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:    All counsel of record